UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GERMAINE MONTES,

                                  Petitioner,                    9:22-cv-1021 (BKS/TWD)

v.

BRANDON J. SMITH,

                                  Respondent.
_____

**Appearances:**

*Petitioner Pro Se:*
Germaine Montes
18-A-3075
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

*For Defendant:*
Letitia James
Attorney General for the State of New York
Paul B. Lyons
Assistant Attorney General
28 Liberty Street
New York, NY 10005

**Hon. Brenda K. Sannes, Chief United States District Judge:**

MEMORANDUM-DECISION AND ORDER

I.     INTRODUCTION

        Petitioner Germaine Montes, a New York State inmate, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Dkt. No. 1). On April 17, 2023, Respondent filed an answer, accompanied by the state court records related to the matter. (Dkt. No. 16, 17, 18). Petitioner filed a reply on July 24, 2023. (Dkt. No. 28). This matter was assigned to United States Magistrate Judge Thérèse Wiley Dancks who, on August 11, 2025, issued a Report-

Recommendation and Order recommending that the petition be denied and dismissed in its entirety. (Dkt. No. 30). Magistrate Judge Dancks advised the parties that under 28 U.S.C. § 636(b)(1), they had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. (Dkt. No. 30, at 72). Presently before the Court are Petitioner's objections to the Report-Recommendation, (Dkt. No. 31), Respondent's response to those objections, (Dkt. No. 32), and Petitioner's reply, (Dkt. No. 33). For the reasons that follow, the Court finds Petitioner's objections without merit, adopts the Report-Recommendation in all respects, and denies and dismisses Petitioner's petition.

## II. STANDARD OF REVIEW

The Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [Report-Recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (citation omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id*.

## III. DISCUSSION

On June 4, 2018, Petitioner was convicted, following a jury trial, of three counts of criminal possession of a forged instrument in the second degree, in violation of New York Penal Law § 170.25. (Dkt. No. 18-3, at 751–52). At sentencing, Petitioner received an indeterminate

2

term of two to four years on the first count and two to four years on the second count, to run consecutively to the sentence imposed on the first count, and a term of two to four years on the third count, to run concurrently with the sentences imposed on the prior counts. (*Id.* at 772; *see also* Dkt. No. 18-1, at 108–09). The Appellate Division, Third Department, affirmed Petitioner's conviction on December 26, 2019, *see People v. Montes*, 178 A.D.3d 1283, 1283 (3d Dep't 2019), and the New York Court of Appeals denied leave to appeal on February 4, 2020, *see People v. Montes*, 34 N.Y.3d 1161 (N.Y. 2020), *reconsideration denied*, *People v. Montes*, 35 N.Y. 3d 943 (N.Y. 2020).

Petitioner subsequently filed a motion to vacate his judgment of conviction under New York Criminal Procedure Law ("CPL") § 440.20 in Albany County Court, (Dkt. No. 18-1, at 709–19), which was denied on August 4, 2020, (*id.* at 1005–08), as was Petitioner's request to the Appellate Division, Third Department for leave to appeal the denial under CPL § 460.15, (*id.* at 1057).

On August 11, 2020, Petitioner filed his first pro se motion for a writ of error coram nobis in the Appellate Division, Third Department, arguing ineffective assistance of appellate counsel. (Dkt. No. 18-1 at 1058-85). The Appellate Division summarily denied Petitioner's motion for coram nobis relief on October 8, 2020. (Dkt. No. 18-2, at 260). On April 12, 2021, Petitioner filed a second, nearly identical pro se motion for a writ of error coram nobis, and on May 17, 2021, the Appellate Division summarily denied the motion. (Dkt. No. 18-2, at 261–91). Petitioner did not seek leave to appeal either motion.

On March 15, 2021 and March 30, 2021, Petitioner filed pro se habeas corpus petitions in Albany County Court and the Appellate Division, respectively. (*See* Dkt. No. 18-2 at 298-303, 316-22). Both petitions were denied. (*See id.* 305–06, 343). The Appellate Division also denied

Petitioner's application for leave to appeal the Albany County Court's denial of his petition. (*Id.* at 315).

On November 2, 2021, Petitioner filed a second motion to vacate his judgment of conviction under CPL § 440.10. (Dkt. No. 18-2, at 344–78). The Albany County Court denied Petitioner's motion, and the Third Department denied leave to appeal. (*Id.* at 467–85, 627).

Petitioner filed the instant petition on September 29, 2022, asserting seventeen grounds for habeas corpus relief under 28 U.S.C. § 2254. (Dkt. No. 1). Specifically, Petitioner argues that (1) his convictions were unsupported by legally sufficient evidence and against the weight of the evidence, (Dkt. No. 1 at 5 (Ground One)); (2) the grand jury proceedings and indictment were "defective," (*id.* at 8–9 (Ground Two)); (3) the jury's verdict was a result of juror "misconduct/bias," (*id.* at 9–11 (Ground Three)); (4) the trial court erred in admitting copies of the forged checks, (*id.* at 11–12 (Ground Four)); (5) his right to a speedy trial was violated pre-indictment and post-indictment, (*id.* at 13–14 (Grounds Five and Eleven)); (6) the People violated *Brady*, *Rosario*, and committed discovery violations, (*id.* at 13–14 (Grounds Six, Seven, Eight, and Nine)), (7) there was newly discovered exculpatory evidence and Petitioner has a claim of actual innocence, (*id.* at 14 (Grounds Twelve and Thirteen)); (8) the police failed to follow proper identification procedures, (*id.* at 15 (Ground Fourteen)); (9) the state trial court lacked jurisdiction, (*id.* (Ground Fifteen)); (10) ineffective assistance of trial counsel, (*id.* (Ground Sixteen)); and (11) ineffective assistance of appellate counsel, (*id.* at 16 (Ground Seventeen). After carefully considering each of these claims, Magistrate Judge Dancks recommended that the petition be denied. (*See generally* Dkt. No. 30).

Petitioner raises specific objections to Magistrate Judge Dancks' analysis of the legal sufficiency and weight of the evidence supporting his convictions (Ground One), Petitioner's

4

claim of jury misconduct and bias (Ground Three), and Petitioner's claim that law enforcement's identification procedures violated due process (Ground Fourteen). The Court assumes familiarity with the Report-Recommendation and the facts underlying the petition, as summarized in the Report-Recommendation, and considers Petitioner's objections in the context of Grounds One, Three, and Fourteen, in turn.

### A.    Ground One – Legal Sufficiency and Weight of the Evidence

Petitioner claims that his conviction under New York Penal Law § 170.25 of three counts of criminal possession of a forged instrument in the second degree was legally insufficient and against the weight of the evidence. (Dkt. No. 1, at 5).

Before considering the merits, Magistrate Judge Dancks explained that while federal habeas corpus review of a legal sufficiency claim is available under § 2254, review of a claim that a verdict is against the weight of the evidence, which is founded in state law, is not. (Dkt. No. 30, at 17 (citing *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011))). Magistrate Judge Dancks thus recommended a finding that Petitioner's weight of the evidence claim provides no basis for habeas relief. As Petitioner does not specifically object to this finding and as the Court finds no clear error, the Court adopts Magistrate Judge Dancks' recommendation. *See Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) (distinguishing a "legal sufficiency" challenge to a guilty verdict from a "weight of the evidence" challenge, and explaining that while a legal sufficiency challenge is "based on federal due process principles," habeas corpus review of a weight of the evidence challenge is not available because it is a "pure state law claim grounded New York Criminal Procedure Law § 470.15(5)"); *see also* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty").

Turning to Petitioner's legal sufficiency argument, Magistrate Judge Dancks reviewed the requisite elements for a conviction of criminal possession of a forged instrument in the second degree under New York Penal Law § 170.25: "'to be found guilty, the People were required to prove that defendant uttered or possessed the subject forged instruments 'with knowledge that [they were] forged and with intent to defraud, deceive or injure another.'" (Dkt. No. 30, at 18–19 (quoting *People v. Montes*, 178 A.D.3d 1283, 1284 (N.Y. App. Div. 2019)). Ultimately, Magistrate Judge Dancks was "unable to conclude that *no* rational trier of fact could have agreed with the jury," and found the Appellate Division's "denial of Petitioner's legal sufficiency claim was not objectively unreasonable." (*Id.* at 20). In reaching this conclusion, Magistrate Judge Dancks cited the following facts adduced at trial through witness testimony, bank records, and ATM photographs: between November 2014 and March 2015, Petitioner approached three separate individuals, Rashid Kendall, Justine Ortiz, and Jonathan Hernandez, and requested that they each open a bank account and then provide him with the account information, including the bank starter packet, debit card, pin number, and starter checks; Petitioner gave each individual cash, gift cards, or merchandise in return for opening the bank accounts; a forged check was deposited into each individual's bank account via ATM deposit shortly after Petitioner procured the corresponding account information; in the days following the deposits, a "number of balance inquiries were made on each account and, once the subject funds became accessible, a succession of ATM withdrawals and/or other large purchases and/or payments would be made from each respective account"; the three individuals had no knowledge of any check that was deposited, had not personally deposited any check, and did not affix a signature to the check—or recognize the signature endorsing the check; Petitioner was

6

identifiable in the photographs from the ATMs where the deposits were made and bank records of the deposits correspond with the date of each photograph. (*Id.* at 19).

In his objections, Petitioner argues that Magistrate Judge Dancks "overlooked" his claim that the "state courts decision was based on an unreasonable determination of facts." (Dkt. No. 31, at 3 (arguing that legal sufficiency issue "was fully detailed in his memorandum of law" (citing Dkt. No. 28, at 13–15)). In his reply, Petitioner argued that none of the individuals who he allegedly asked to open bank account testified that Petitioner forged any checks, that they saw Petitioner in possession of any forged checks, or that Petitioner endorsed their names on the checks. (*Id.* at 14–15). Petitioner further argued that the ATM photographs of the alleged deposits that were presented at trial did not "show anything (including a forged check or debit card) on the person's hand nor does it clearly identifies [sic] Petitioner." (*Id.* at 15). However, not only did Magistrate Judge Dancks expressly acknowledge these arguments, (Dkt. No. 30, at 20), but after reviewing the Appellate Division's decision finding Petitioner's convictions were supported by legally sufficient evidence as well as the evidence presented at trial, Magistrate Judge Dancks was unable to conclude no rational trier of fact could have agreed with the jury or that the state court's denial of Petitioner's legal sufficiency claim was objectively unreasonable. Moreover, having considered Petitioner's objections de novo, the Court agrees with Magistrate Judge Dancks. The evidence was legally sufficient to convict Petitioner even without affirmative testimony by the individual account owners that Petitioner forged, or that they saw Petitioner in possession of, the forged checks. All three individuals testified at trial that Petitioner asked them to open bank accounts and to give him bank information in exchange for a cash, merchandise, or gift cards. (Dkt. No. 18-3, at 454–75, 569–84, 585–99). Bank records detailing the allegedly forged checks and subsequent transactions were presented to the jury along with photographs

7

from the bank's surveillance cameras depicting the ATMs at the date and time the allegedly forged checks were deposited. (Dkt. No. 18-3, at 525 (admitting People's Exhibits 1, 2, 3 (bank records) into evidence), 497 (admitting People's Exhibit 4 (bank photographs) into evidence)). Although Petitioner argues that the photographs did not clearly identify him as the individual making the deposits, it was for the jury to evaluate any likeness between the individual in the photograph and Petitioner's actual appearance in the courtroom. *Jones v. Artus*, No. 16-cv-6149, 2018 WL 2198715, at *4, 2018 U.S. Dist. LEXIS 81183, at *12 (W.D.N.Y. May 14, 2018) (rejecting § 2254 claim of legal insufficiency of a criminal possession of forged instrument convictions under New York Penal Law §§ 170.25 and 170.30, finding that "[e]ven a cursory review of the evidence presented at trial demonstrate[d] that the evidence was certainly sufficient to support the jury verdict," noting that "[t]he undercover officer . . . testified concerning several face-to-face meetings with Jones and described in detail the transactions involved" and that "[t]hese meetings were recorded and the prosecution played tapes of the recordings to the jury"). The Court therefore adopts Magistrate Judge Dancks' recommendation and finds Petitioner's legal sufficiency claim provides no basis for relief.

### B.  Ground Three - Jury Misconduct or Bias

Petitioner argued that the jury's guilty verdict was tainted by juror misconduct and bias, in violation of his Fifth, Sixth, and Fourteenth Amendment rights. (Dkt. No. 1, at 9). Specifically, Petitioner asserted that Juror Number 5 was permitted to return a verdict even after she informed the trial court that she "[d]id not want to continue to deliberate," "[d]id not want to stay in the room with other jurors and was uncomfortable," and that "her peers [were] committing misconduct and bias." (*Id.*).

Magistrate Judge Dancks found that during the State appellate review process, Petitioner had asserted claims regarding Juror Number 5 "solely in state law terms." (Dkt. No. 30, at 23).

Noting that, for example, Petitioner's arguments in his application for leave to appeal the Third Department Appellate Division's adverse decision to the New York Court of Appeals rested on New York case law interpreting a criminal defendant's rights under the New York constitution, and that such arguments "failed to fairly present any federal constitutional claim," Magistrate Judge Dancks concluded that the federal constitutional claim "was not properly exhausted." (*Id.* at 23). And as Petitioner could not return to state court to assert federal claims regarding Juror Number 5's conduct, Magistrate Judge Dancks further concluded that as he could no longer properly exhaust such claims, such claims were therefore procedurally defaulted. (*Id.* at 24).

Magistrate Judge Dancks next considered whether Petitioner had demonstrated any cure for the procedural default—by showing both cause for the procedural default and prejudice or by showing that "failure to consider the federal claim w[ould] result in a fundamental miscarriage of justice." (*Id.*). Magistrate Judge Dancks found that Petitioner had not established cause for failing to exhaust his federal claim, but concluded that even if he had, he failed to show prejudice because his claim was meritless. (*Id.* at 25). Specifically, Magistrate Judge Dancks explained that Petitioner had not identified any Supreme Court precedent that the state trial court or Appellate Division violated when considering Petitioner's claims that Juror Number 5's statements during deliberations or in her post-verdict affirmation called into question her impartiality or warranted her disqualification. (*Id.*). Magistrate Judge Dancks further noted that courts in the Second Circuit had affirmed denial of habeas relief "despite allegations of coercion or outside influence on members of the jury" (*Id.* (citing *Jacobson v. Henderson*, 765 F.2d 12, 14 (2d Cir. 1985)).

Petitioner acknowledges that he "did not rely on Federal Constitutional cases or State cases using Constitutional analysis" in connection with his juror misconduct claim but argues that procedural exhaustion for purposes of a § 2254 claim does not require that he "cite 'book

9

and verse' of the Constitution" in order to preserve a claim for § 2254 review. (Dkt. No. 31, at 1). Petitioner further argues that he raised his juror misconduct claim "in federal terms through his supplemental brief and a state habeas corpus." (*Id.* at 1–2). Specifically, Petitioner asserts that Juror Number 5's "vote to find petitioner guilty was percured [sic] while being under fear" and the trial court "should have asked the juror if she was still able to be fair and impartial," and that the trial court knew Juror Number 5 "was not in the right state of mind to render a vote," but still allowed deliberation to continue. (*Id.* at 2). Petitioner argues that the prejudice in allowing Juror Number 5 to continue to deliberate was "manifest," "implicates constitutional concerns, specifically 'the concept of fundamental fairness,'" and "should be considered exhausted." (*Id.* at 2). The Court reviews de novo Petitioner's challenge to Magistrate Judge Dancks' determination that the juror misconduct claim was raised solely in state law terms and, thus, had not been procedurally exhausted and that, in any event, the juror misconduct claim affords no basis for relief.

In his direct appeal, Petitioner argued that the trial court should have granted his request for a mistrial or dismissed Juror Number 5 when it became obvious that she was "grossly unqualified to serve" because her state of mind would prevent her from rendering an impartial verdict. (Dkt. No. 18-1, at 223–27). As Magistrate Judge Dancks explained, (*see* Dkt. No. 30, at 22–23), Petitioner's brief on direct appeal contained only a state law analysis of the trial court's handling of the issues that arose during (and after) trial concerning Juror Number 5, (*see*, *e.g.*, Dkt. No. 18-1, at 223 (citing NY CPL § 270.35(1)), 224 (citing *People v. Baum*, 54 A.D.3d 605 (N.Y. App. Div. 1st Dep't 2008))). Petitioner's argument regarding Juror 5 in his application to the Court of Appeals for leave to appeal the Appellate Division's denial also centered on New York law. (Dkt. No. 18-1, at 690 (arguing the trial court failed to follow *People v. Burford's*

process for determining whether a juror is grossly unqualified under CPL § 270.35 (citing *People v. Burford*, 690 N.Y.2d. 290 (N.Y. 1987)). Having considered this argument de novo, the Court adopts Magistrate Judge Dancks' recommended finding that Petitioner failed to present any federal claim concerning Juror 5, and that the claim is procedurally defaulted. *Sweeney v. Superintendent of the Watertown Corr. Facility*, No. 06-cv-0663, 2007 WL 2176987, at *5, 2007 U.S. Dist. LEXIS 54730, at *14–15 (E.D.N.Y. July 27, 2007) (finding claim that juror was grossly unqualified to be procedurally defaulted, noting that "[i]n his brief to the Second Department, petitioner failed to cite federal authority asserting his due process rights or to even allege that the failure to dismiss Juror 10 deprived him of a fair trial," and had only argued that "'[J]uror number 10[was] grossly unqualified as defined by the law of New York State'") (alterations in original).

Nor does the Court find on de novo review that Petitioner is entitled to relief on the merits of his claim that the failure of the trial court to dismiss Juror 5 deprived him of a fair trial. "[S]ection 2254(d) of Title 28 of the United States Code requires federal courts in habeas proceedings 'to show a high measure of deference to the factfindings made by the state courts.'" *Jacobson v. Henderson*, 765 F.2d at 15 (quoting *Sumner v. Mata*, 455 U.S. 591, 598 (1982)). Magistrate Judge Dancks recounted the trial court's questioning of Juror 5 regarding her statements that she did not want to continue to deliberate, was uncomfortable, and felt she was being "ganged up on" by other jurors, its thorough inquiry into the matter by questioning each juror separately, and findings that Juror 5 was not being singled out and there was no external or improper influence. (Dkt. No. 30, at 26–27; *see also* Dkt. No. 18-1, at 704; Dkt. No. 18-3, at 746–47). Indeed, the trial court not only provided a sympathetic response to Juror 5's concerns but also careful advice regarding the deliberative process, the importance of each juror's opinion,

11

and Juror 5's own duty to continue to deliberate even if others did not accept her opinions "right away." (Dkt. No. 18-3, at 746–47). The jury notified the trial court that it had reached a verdict approximately an hour later and each juror affirmed the verdict in a poll thereafter. (*Id.* at 750–56). The Court finds no basis for habeas relief under these circumstances, none of which suggests misconduct to a degree that would undermine the trial court's findings. *See Goode v. Mazzuca*, No. 00-cv-7932, 2004 WL 1794508, at *6–7, 2004 U.S. Dist. LEXIS 15770, at *20 (S.D.N.Y. Aug. 11, 2004) (explaining that "[s]ection 2254(d) does not lightly permit a federal court to revisit a factual determination of a state court" and that "[a]llegations of verbal intimidations among jurors, even to the point of screaming and abusive language, do not rise to the level of clear and strong evidence necessary to warrant habeas relief" and "do not provide concrete evidence of misconduct" (citing cases)). Accordingly, the Court adopts Magistrate Judge Dancks' analysis and recommendation and denies Ground Three of the petition.

    C.    **Ground Fourteen – Police Identification Procedures**

In his fourteenth ground for relief, Petitioner argued that police failed to follow blind identification procedures—a photo array, for example—with Kendall, Ortiz, and Hernandez, and instead showed them one photograph of Petitioner, in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments. (Dkt. No. 1, at 15). Magistrate Judge Dancks rejected Petitioner's argument, noting that the trial court had denied the Petitioner's motion to suppress or preclude Kendall, Ortiz, and Hernandez from identifying Petitioner at trial, finding that the People had established that their identifications were confirmatory.

In his objections, Petitioner asserts that: Kendall misled the police "to seem as petitioner was the person involved with committing the crime(s) charged, the police mislead Ortiz and Hernandez to misidentify petitioner"; "at first" Ortiz and Hernandez "gave police a different name and description of a different suspect, improper police identification procedures led to

12

Ortiz and Hernandez misidentifying the petitioner as the individual they "met up with" and who asked them to open the bank accounts; during pre-trial hearings, Kendall "tried to come clean" but the trial court "stopped" him; both Kendall and "a witness named Franklin" wrote affidavits prior to trial stating they were subject to police coercion; Kendall, Ortiz, and Hernandez "received a benefit not to get charged with a crime in exchange for testimony"; Kendall, Ortiz, and Hernandez failed to provide any evidence corroborating their testimony; and neither the People nor the police provided any "reason for the improper employment of a photograph." (Dkt. No. 31, at 4–5). Petitioner's third objection appears to touch on several of the petition's grounds for relief, including that the People violated *Brady*, *Rosario*, and committed discovery violations, (Dkt. No. 1, at 13–14 (Grounds Six, Seven, Eight, and Nine)), and that the police failed to follow proper identification procedures, (*id.* at 15 (Ground Fourteen); *see* Dkt. No. 31, at 3–5). However, none of these assertions identifies any "specific portion[]" of the Report-Recommendation that Petitioner "asserts are erroneous and provides a basis for this assertion." *Kruger*, 976 F. Supp. 2d at 296. The Court has accordingly reviewed Magistrate Judge Dancks' analysis of these issues for clear error and having found none in Magistrate Judge Dancks' careful consideration of Grounds Six, Seven, Eight, and Nine, adopts her recommended finding that these Grounds provide no basis for habeas relief.

However, Petitioner makes one specific objection to Magistrate Judge Dancks' analysis of his claim that the identification procedures (Ground Fourteen) "ran afoul the constitution." (Dkt. No. 31, at 4). Petitioner argues that Magistrate Judge Dancks failed to apply the "correct standard" for evaluating the constitutionality of witness identification procedures, which requires consideration of the "totality of the circumstances" to determine whether there was a due process violation. (Dkt. No. 31, at 4 (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967))).

In analyzing Petitioner's claim that a suggestive pre-trial display of a single photograph of Petitioner to Kendall, Ortiz, and Hernandez tainted their identification of Petitioner at trial as the individual who asked them to open bank accounts, Magistrate Judge Dancks explained that under the "federal standard," "identification procedures violate due process only if they yield unreliable identifications." (Dkt. No. 30, at 52 (quoting *Graham v. Ricks*, No. 02-cv-0303, 2004 WL 768579, at *14 n.33, 2004 U.S. Dist. LEXIS 5803, at *47 n.33 (N.D.N.Y. Apr. 7, 2004))). This is correct: "Supreme Court precedent clearly identifies 'reliability' as 'the linchpin in determining the admissibility of identification testimony.'" *Wiggins v. Greiner*, 132 F. App'x 861, 864 (2d Cir. 2005) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). Even when an identification may be unnecessarily suggestive—obtained, for instance, following the display of single photo, not a photo array, *see Stovall*, 388 U.S. at 302 ("[T]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned."), whether such identification is unreliable and thus violates due process depends, as Petitioner points out in his objections, (Dkt. No. 31, at 4), "on the totality of the circumstances," *Stovall*, 388 U.S. at 302; *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990) (weighing "the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable" is required to determine whether identification was "the product of the earlier suggestive procedures"). The relevant circumstances include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).

Here, the Albany County Court's findings of fact regarding Kendall, Ortiz, and Hernandez's interactions with Petitioner, on which Magistrate Judge Dancks relied in her analysis, demonstrate reliability of their in-court identification of Petition. (Dkt. No. 30, at 53 (citing Dkt. No. 18-1, at 165–70)). The Albany County Court found: that Kendall had known Petitioner for "several years," "has a child in common with the [Petitioner's] sister," and had been in Petitioner's company at family events "hundreds of times"; that Ortiz engaged in face-to-face interactions at least twice in connection with her procurement of a bank account at Petitioner's request, and rode in a vehicle with Petitioner to and from the bank; and that Petitioner and Hernandez met face-to-face and had a "5 to 10-minute conversation" in Petitioner's vehicle when Hernandez gave Petitioner his bank account information. (*Id.* at 166–67). Thus, having reviewed the issue de novo, the Court concludes that Magistrate Judge applied the correct standard and that habeas relief is not warranted because there is no basis for finding that any witness identification was unreliable or obtained in violation of the Constitution. *See Parker v. Lee*, No. 18-cv-10400, 2020 WL 13568020, at *8, 2020 U.S. Dist. LEXIS 44479, at *21 (S.D.N.Y. Mar. 11, 2020) (finding "state courts' adjudications with respect to the petitioner's identification were not "contrary to nor an unreasonable application of the controlling Supreme Court precedent" because even if photographs were "presumptively suggestive," factual record demonstrated identification was "independently reliable"), *report and recommendation adopted*, 2022 WL 7164257, 2022 U.S. Dist. LEXIS 177899 (S.D.N.Y. Sept. 29, 2022); *Espinal v. Duncan*, No. 00-cv- 4844, 2000 WL 1774960, at *3, 2000 U.S. Dist. LEXIS 17337, at *7–8 (S.D.N.Y. Dec. 4, 2000) (finding individual's "prior acquaintance with [the petitioner] established that the in-court identification was reliable notwithstanding the prior photographic display").

Having reviewed the remainder of the thorough Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

## IV.     CONCLUSION

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 30) is **ADOPTED** in its entirety; and it is further

**ORDERED** that the Petition (Dkt. No. 1) is **DENIED** and **DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") is issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2). Any further request for a COA must be addressed to the Court of Appeals (Fed. R. App. P. 22(b); and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>January 13, 2026</u>
       Syracuse, New York

*Brenda K. Sannes* (signature)
Brenda K. Sannes
Chief U.S. District Judge